# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00544-SCT

*IN THE MATTER OF THE ESTATE OF C.W.
WHITE, DECEASED: ANITA WHITE,
INDIVIDUALLY AND AS EXECUTRIX OF THE
ESTATE OF C.W. WHITE*

*v.*

*CHARLES TOMMY WHITE*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/09/2016 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| TRIAL COURT ATTORNEYS: | JOHN THOMAS LAMAR, III |
| | ROBERT RYAN REVERE |
| | JOHN THOMAS LAMAR, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN THOMAS LAMAR, III |
| | JOHN THOMAS LAMAR, JR. |
| ATTORNEY FOR APPELLEE: | ROBERT RYAN REVERE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 08/31/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KITCHENS AND CHAMBERLIN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Anita White appeals the Chancery Court of DeSoto County's confirmation of title to

certain real property located in Yalobusha County to Charles Thomas White ("Tommy").

Anita claimed the property through the residuary clause of Charles William White's

("Bill's") will. Tommy claimed the property through an earlier conveyance from his father

and long-time partner, Bill. The chancellor found the earlier conveyance valid. Anita appealed. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     This case is before the Court following remand. The facts of this case are contained in the prior opinion from this Court:

> Charles William White ("Bill") and his son Charles Thomas White ("Tommy"), were partners in a business that owned and operated convenience stores. In 2000, during the course of the partnership, Bill married Anita White. In 2005, Tommy bought his father's share of the partnership for [$21,318.10], but in dissolving the partnership, Bill and Tommy neglected to execute and file deeds transferring the partnership's real property.[1]
>
> In early 2009, Bill's health declined rapidly, and Anita and Tommy began to clash over Bill's healthcare. Tommy wanted his father to receive life-sustaining treatment and Anita wanted her husband to die with dignity. During this time, Tommy realized that he and his father had failed to execute deeds transferring the partnership's real-property assets. Tommy used a durable power of attorney his father had given him years before to execute quit-claim deeds transferring the partnership property to himself.
>
> [Tommy] and Anita continued to clash over who had authority to make healthcare decisions for Bill, so Tommy filed a petition for a conservatorship for his father's benefit and sought appointment as his father's conservator. Anita filed a counterclaim that challenged Tommy's fitness to serve as his father's conservator and sought to have Tommy return all assets he had transferred to himself using his father's power of attorney. The chancellor agreed that a conservatorship was appropriate, but he appointed a third party as Bill's conservator.
>
> When Bill died in June 2009, the conservator filed a motion asking to be discharged from his duties and to be allowed to distribute the assets of the conservatorship to Bill's estate. The parties agreed to an order discharging the conservator and to a distribution of funds held by the conservator to Bill's estate. The order noted "that W.E. Davis is discharged as Conservator for

---

[1]The real properties in question were acquired by Bill and Tommy in 1981, 1992, and 1994.

2

C.[W]. White, and that formal accounting is waived," and "this Conservatorship is closed." The chancellor's order made no mention of Anita's action to set aside the deed transfers.

In February 2010, Anita filed suit to set aside the quit-claim deeds and to redeem the real property Tommy had acquired using his father's power of attorney. The parties filed competing motions for summary judgment. Tommy argued that the order discharging the conservator barred relitigation of the conveyances because Anita sought to have the conveyances set aside in the conservatorship. Anita argued that the transfers were not in Bill's best interests and that the transfers should be set aside and the property returned to Bill's estate. The chancellor held that Anita's action was barred by res judicata, granted Tommy's motion, and denied Anita's cross-motion for summary judgment.

Anita appealed to the Court of Appeals, arguing that her action was not barred by res judicata and that the chancellor had erred by denying her motion for summary judgment. The Court of Appeals affirmed the chancellor, finding that "all four identities of res judicata [were] present," and that "the chancellor correctly held that the doctrine of res judicata preclude[d] Anita's second lawsuit." We granted Anita's petition for a writ of certiorari.

*Estate of White v. White*, 152 So. 3d 314, 315-16 (Miss. 2014). "Because there was no final judgment on the merits, we must reverse the judgment of the Court of Appeals and the chancellor's judgment dismissing Anita's claims and remand the case to the DeSoto County Chancery Court for further proceedings consistent with this opinion." *Id.* at 317.

¶3. On remand, the chancellor determined the properties at issue were partnership property and concluded that the 2005 instrument Bill used to dissolve the partnership contained all the requirements to effect the transfer of property. Because the property was transferred to Tommy in 2005, it was not owned by Bill at the time of his death and therefore could not pass to Anita through the residuary clause of Bill's will. The chancellor determined no confidential relationship existed between Bill and Tommy in 2005 and thus Tommy had

3

exerted no undue influence over Bill in executing the dissolution and transfer instrument. Because the chancellor determined the 2005 instrument transferred the property, the court found the 2009 quitclaim deeds inconsequential and declined to analyze whether Tommy's use of the power of attorney in 2009 breached a fiduciary duty to Bill. Anita appealed.

## ISSUES

¶4.     Anita raised four issues, which have been reordered and restated in two issues for clarity, as they are case-dispositive:

> I.      Whether the chancellor erred in considering and relying on the 2005 instrument.
>
> II.     Whether the 2005 instrument sufficed to transfer Bill's partnership interest in real property.

## ANALYSIS

¶5.     This Court "review[s] a chancellor's legal conclusions de novo," but "accept[s] a chancellor's factual findings unless—given the evidence in the record—[it] conclude[s] that the chancellor abused his or her discretion, and no reasonable chancellor could have come to the same factual conclusions." ***Kilpatrick v. Whitehall on MS River, LLC***, 207 So. 3d 1241, 1245 (Miss. 2016).

> **I.      Whether the chancellor erred in considering and relying on the 2005 instrument.**

¶6.     Anita argues that Bill's will was unambiguous, and therefore the 2005 instrument was inadmissible parol evidence of testamentary intent. *See **Estate of Blount v. Papps***, 611 So. 2d 862, 866 (Miss. 1992) (" In determining the testator's intent, in the absence of ambiguity,

this Court is limited to the 'four corners' of the will itself."). But Tommy did not seek to admit the 2005 instrument as evidence of testamentary intent:

> [W]e are not using those documents to address any type of test[amentary] intent. We've got a document from 2005 that we are using to establish that transfer—that the property was transferred before the date of Mr. [Bill] White's death, and to rebut any arguments from the other side that . . . Mr. Tommy violated any fiduciary duty or any und[ue] influence there.

Because the document was admitted to show that the property had been adeemed prior to the testator's death, its admission did not violate the parol evidence rule.

## II. Whether the 2005 instrument sufficed to transfer Bill's partnership interest in real property.

¶7. Section 89-1-1 provides:

> Any interest in or claim to land may be conveyed to vest immediately or in the future, by writing signed and delivered; and such writing shall have the effect to transfer, according to its terms, the title of the person signing and delivering it, with all its incidents, as fully and perfectly as if it were transferred by feoffment with livery of seizin, notwithstanding there may be an adverse possession thereof.

Miss. Code Ann. § 89-1-1 (Rev. 2011). Any interest in or claim to land may be conveyed "not only by deed or will but by any other instrument of writing signed and delivered." *Ricks v. Merchants Bank & Trust Co. of Vicksburg*, 2 So. 2d 344, 346 (Miss. 1941). An instrument of conveyance

> will be construed to effectuate the manifest intention and purpose of the parties although it is inartificially and untechnically drawn. Technical terms, however, need not be used; and if an intention to pass a title is disclosed, the court will give effect to such intention notwithstanding inaccuracy of expression, or inaptness of the words used.

*Allen v. Boykin*, 24 So. 2d 748, 749 (Miss. 1946) (internal citations omitted).

¶8. The 2005 instrument was typed on C.W. White Partnership letterhead, addressed to the partnership's accountant, and dated April 28, 2005. It reads, "This is to verify and certify that I wish to dissolve C W White Partnership, Fed. ID # [redacted] effective December 31, 2004, and transfer all its property/assets to Charles Thomas White SSN [redacted]." It was signed by C.W. "Bill" White, as General Partner, and witnessed by Bill Finch Jr., whose signature also is dated April 28, 2005. Janet L. Dickey notarized that Bill had subscribed and sworn to the instrument before her on April 28, 2005. Tommy testified that his father "signed it, had it witnessed, gave it back to me, and I've kept it ever since."

¶9. The 2005 instrument is a writing which was signed, sealed, and delivered. The instrument evinces Bill's intent to transfer title to "all [partnership] property to [Tommy]." Anita complains that the property description in the instrument is insufficient.

¶10. According to this Court's precedent,

> [g]enerally speaking, a description of land in [an instrument] is not void if it contains sufficient indicia to indicate what was conveyed, so that, with the [instrument] and the information indicated by it, the land can be located with certainty; and a defect in the description may be cured by aid of parol evidence giving the identity of the premises intended to be conveyed.

*Herod v. Robinson*, 115 So. 40, 41 (Miss. 1927). *See also* *Moffett v. Int'l Paper Co.*, 139 So. 2d 655, 656 (Miss. 1962) ("[A] conveyance of all of the property of the grantor in a certain state is sufficient to pass the grantor's title to real estate in that state, without a particular description. It can be made certain.").

¶11. The deed in *Moffett* conveyed "all right and title owned by the grantor in lands, timber, minerals, and all other property and rights, real, personal or mixed, situated in the

6

State of Mississippi." *Id.* Similarly, the 2005 instrument purported to transfer "all [partnership] property." While the 2005 instrument did not specify "in the state of Mississippi" as did the deed in *Moffett*, evidence was presented at trial that the partnership owned only land in Mississippi and that the Yalobusha properties were partnership properties.

¶12.    "Property is partnership property if acquired in the name of the partnership." Miss. Code Ann. § 79-13-204(a)(1) (Rev. 2013). The 1994 deed provides on its face that it was conveyed to "C. W. WHITE PARTNERSHIP, C. W. and C. T. WHITE, PARTNERS."

> Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership.

Miss. Code Ann. § 79-13-204© (Rev. 2013). The 1981 deed, which addresses four tracts of land, acknowledges that "the property is and has always been considered owned by Charles W. White and Charles Thomas White and was purchased and has been paid for from partnership funds." The 1992 deed lists the grantees as Charles W. White and Charles T. White, as tenants in common. At trial, the testimony revealed that all of these properties were treated as partnership property, that they were purchased with partnership funds, that the property taxes were paid with partnership funds, and that the rent from the properties was collected by and paid to the partnership.

¶13.    We find the evidence supports the chancellor's determination that the property at issue was partnership property. Therefore, the "identity of the premises intended to be conveyed" was evidenced at trial and the property described in the 2005 instrument could be made

sufficiently certain. The chancellor did not err in finding the 2005 instrument sufficient to transfer the property to Tommy.

## CONCLUSION

¶14.   For the reasons stated, we affirm the judgment of the DeSoto County Chancery Court.

¶15.   **AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS, KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**